**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DARRELL BURBRIDGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **NPL CONSTRUCTION CO.,** | ) | **Jury Trial Requested** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff, DARRELL BURBRIDGE, by and through his counsel, Lisa Kane of Lisa Kane &

Associates, and complaining of Defendant, NPL CONSTRUCTION CO., states as follows:

### PRELIMINARY STATEMENT

1.      This is an action seeking redress for the violation of rights guaranteed to Plaintiff

by 42 U.S.C. § 1981. Plaintiff seeks mandatory injunctive relief and damages to redress Defendant's

discriminatory employment practices.

### JURISDICTIONAL STATEMENT

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and (4) and

28 U.S.C. § 1331 to secure protection and redress deprivation of rights secured by 42 U.S.C. § 1981.

Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### VENUE

3.      Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

### PARTIES

4.      Plaintiff, Darrell Burbridge, (hereinafter "Plaintiff" or "Burbridge"), is an African-

1

American and citizen of the United States who resides in Illinois.

5.      Defendant, NPL Construction Co., (hereinafter "Defendant" or "NPL Construction"), is a foreign corporation which has at all times relevant hereto, conducted, and continues to conduct, business in the State of Illinois. Defendant has continuously, and does now employ more than fifteen (15) employees. Defendant, NPL Construction Co., is engaged in an industry that affects commerce and is an employer for the purposes of 42 U.S.C. § 2000e et seq.

### COUNT I - 42 U.S.C. § 1981 - RACIAL HARASSMENT

6.      Plaintiff, who is an African-American, was hired as a Laborer in July of 2013 by Defendant's Superintendent, Arnie Albrecht.

7.      Plaintiff was often the only African-American on any crew he worked on while employed by Defendant.

8.      Throughout his employment relationship with Defendant, Plaintiff performed to Defendant's reasonable satisfaction, and any assertion to the contrary is pre-textual in nature.

9.      Almost immediately after beginning his employment with Defendant, Plaintiff encountered various forms of racial harassment as a result of his race, African-American.

10.      In this regard, Plaintiff was subjected to less favorable terms and conditions of his employment than his non-African American co-workers, and was repeatedly subjected to degrading and offensive racial slurs and epithets by non-African-American supervisors and employees of Defendant.

11.      Beginning in 2013, Plaintiff has been called derogatory racist slurs and epithets by a non-African-American foreman and employees of Defendant in the workplace. Examples of the racist slurs directed by a Caucasian foreman and employees of Defendant towards Plaintiff and other

2

African-Americans include, without limitation:

      a.     "nigger;"

      b.     "niggers,"

      c.     "Y'all niggers," and

      d.     "All your kind."

12. On a continuous basis through the last day of his employment with Defendant, Plaintiff made formal complaints of the racially harassing conduct he was forced to endure to Defendant's Management hierarchy to no avail, despite the fact that Defendant never provided Plaintiff with a racial harassment policy of any kind during his employment.

13. Despite Plaintiff's complaint of racial harassment, no investigation was conducted by Defendant's Human Resources Department and no ameliorative action was taken to eradicate the widespread racial harassment suffered by Plaintiff.

14. Defendant's supervisors empowered fellow non-African-American employees to subject Plaintiff to a course of hostile, abusive, and harassing conduct basely solely upon his race, African-American, during the duration of Plaintiff's employment with Defendant.

15. On at least two occasions, nooses fashioned out of rope to symbolize the lynching of African-Americans were prominently displayed in plain view for Plaintiff and other African-American employees to see for the purpose of intimidation and harassment based upon their race, African-American.

16. Defendant's Hispanic Foreman, Jamie Palato, repeatedly told African-American employees of Defendant that Palato does not like blacks, and that he only wants Hispanics on his crew because blacks work slow.

3

17.     In addition, non-African-American employees would mount a large Confederate flag on their vehicle and drive around Defendant's grounds and parking lot to intimidate African-American employees.  Defendant took no action in respons eto this blatant racial harassment.

18.     Defendant's Caucasian Superintendent, Arne, blatantly ignored Plaintiff's complaints to put an end to the flagrant racial harassment and failed to take any ameliorative measures to eradicate the demeaning and demoralizing racial harassment suffered by Plaintiff.

19.     On May 29, 2015, Plaintiff had a "hit" on a gas line.  The gas line was neither punctured to allow natural gas to escape or seriously damaged.  Nevertheless, Plaintiff was terminated.

20.     In addition, Plaintiff complained to Defendant's Caucasian Superintendent, Arnie Albrecht, that the word "nigger" was a common slur frequently voiced by Defendant's Caucasian supervisors and Caucasian employees.

21.     Providing more incentive to Defendant's supervisors, Plaintiff informed Defendant's Caucasian Superintendent, Arne, that nooses made of rope symbolizing the lynching of African-Americans were left out in plain view, and the display of the Confederate flag on Caucasian employees' vehicles.

22.     Defendant's Caucasian Superintendent, Arnie Albrecht, blatantly ignored Plaintiff's complaints to put an end to the flagrant racial harassment and failed to take any ameliorative measures to eradicate the demeaning and demoralizing racial harassment suffered by Plaintiff.

23.     Defendant maintains a Human Resources Department at the job location Plaintiff worked at.  Defendant has a policy against racial harassment, yet Defendant's facility maintained a racially charged environment which went unabated.

4

24.     Plaintiff complained to Defendant's Human Resources Department regarding the racially charged hostile environment created by the severe and pervasive racial harassment he was forced to endure during his employment with Defendant.

25.     Despite Plaintiff's numerous complaints of racial harassment, no investigation was conducted by Defendant's Human Resources Department and no ameliorative action was taken to eradicate the widespread racial harassment suffered by Plaintiff.

26.     On information and belief, similarly situated non-African-American individuals employed by Defendant have had "hits," and no disciplinary action was taken after just one "hit," let alone resulting in being terminated for a "hit" that did not rupture the natural gas line. These Caucasian employees of Defendant include:

- John Ambrose, who had three (3) hits in a one-month time period;
- Kyle Berger;
- Jason Remington, a foreman who had three (3) "hits" before any disciplinary action was taken;
- Brandon Lopez.

27.     On June 1, 2015, Plaintiff was called back in to work, but was reassigned to a different crew. Plaintiff was advised that his future with Defendant looked bleak.

28.     On December 11, 2015, Plaintiff was laid off and told "if we decide to bring you back, we will call you."

29.     The severe and extensive racially charged environment created by Defendant's supervisors and management, and the lack of appropriate remedial measures taken by Defendant's Human Resources Department has caused Plaintiff to suffer emotional harm and stress which was

5

negatively impacting his every day living.

30.     The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff on the basis of his race, African-American, by subjecting him to a racially hostile work environment, and deprived Plaintiff the enjoyment of all benefits, privileges, terms, and conditions of his employment relationship in violation of 42 U.S.C. § 1981.

31.     As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff suffered damages, including but not limited to, lost and foregone wages and benefits, and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Darrell Burbridge, prays for judgment against Defendant and respectfully requests that this Court:

A.     Declare the conduct of Defendant to violate the rights guaranteed to Darrell Burbridge under appropriate Federal Law;

B.     Grant a permanent injunction restraining Defendant, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C.     Order Defendant to make whole Darrell Burbridge by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.     Order Defendant to pay lost, foregone, and future wages to Darrell Burbridge;

E.     Grant Darrell Burbridge actual, consequential, compensatory, punitive and any other damages the Court may deem appropriate against Defendant;

F.     Grant Darrell Burbridge his attorney fees, costs, disbursements; and

6

G.     Grant Darrell Burbridge such further relief as the Court deems necessary and proper in the public interest.

## COUNT II - 42 U.S.C. § 1981 - RETALIATION

32.    Paragraphs one (1) through twenty-nine (29) are incorporated by reference as if fully set forth herein.

33.    After complaining to Defendant's foreman about the racial harassment he was experiencing, Defendant terminated Plaintiff for a "hit," despite similarly situated non-African-American individuals employed by Defendant having had "hits," and no disciplinary action was taken after just one "hit," let alone resulting in being terminated for a "hit" that did not rupture the natural gas line.

34.    But for Plaintiff voicing his objection to the racial harassment and discriminatory practices of Defendant, Plaintiff would not have been terminated by Defendant.

35.    Plaintiff was called back in to work, but was reassigned to a different crew.  Plaintiff was advised that his future with Defendant looked bleak.

36.    On December 11, 2015, Plaintiff was laid off and told "if we decide to bring you back, we will call you."

37.    On information and belief, a Caucasian Laborer with Defendant with far less seniority than Plaintiff was brought back to work while Plaintiff was never called back to work by Defendant despite his seniority.

38.    But for Plaintiff voicing his objection to the racial harassment and discriminatory practices of Defendant, Plaintiff would have been called back to work.

39.    The aforementioned acts and omissions of Defendant constitute retaliation against

7

Plaintiff based on his opposition to the racial harassment and discrimination he suffered at Defendant, and have deprived Plaintiff the enjoyment of all benefits, privileges, terms, and conditions of her employment relationship in violation of 42 U.S.C. § 1981.

40.     As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff suffered damages, including but not limited to, lost and foregone wages and benefits, and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Darrell Burbridge, prays for judgment against Defendant and respectfully requests that this Court:

A.     Declare the conduct of Defendant to violate the rights guaranteed to Darrell Burbridge under appropriate Federal Law;

B.     Grant a permanent injunction restraining Defendant, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C.     Order Defendant to make whole Darrell Burbridge by providing the affirmative relief necessary to eradicate the effects of Defendants' unlawful practices;

D.     Order Defendant to pay lost, foregone, and future wages to Darrell Burbridge;

E.     Grant Darrell Burbridge actual, consequential, compensatory, punitive and any other damages the Court may deem appropriate against Defendant;

F.     Grant Darrell Burbridge his attorney fees, costs, disbursements; and

G.     Grant Darrell Burbridge such further relief as the Court deems necessary and proper in the public interest.

8

## JURY TRIAL DEMAND

41.     Plaintiff requests a jury trial on all issues of fact and law raised by the allegations

in this complaint.

                                    Respectfully Submitted,
                                    DARRELL BURBRIDGE, Plaintiff

                                    By: s/Lisa Kane
                                        Lisa Kane, Attorney for Plaintiff

Lisa Kane & Associates
Attorney for Plaintiff
141 West Jackson Boulevard, Suite 3620
Chicago, Illinois 60604
(312) 606-0383
Attorney Code No. 06203093
lisakane@sbcglobal.net